IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHICO K.,[1]

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil Action 1:22-cv-416
Magistrate Judge Chelsey M. Vascura

**OPINION AND ORDER**

Plaintiff, Michico K., ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Children's Insurance Benefits ("CDB") under Title II of the Social Security Act. This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 9); the Commissioner's Memorandum in Opposition (ECF No. 12); Plaintiff's Reply (ECF No. 12); and the administrative record (ECF No. 8). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED,** and Plaintiff's Statement of Errors is **OVERRULED**.

    I.    BACKGROUND

This is not Plaintiff's first benefits application. The record reflects that in May 1996, the Social Security Administration ("SSA") determined that Plaintiff met Listing 12.04—formerly referred to as affective disorders, currently referred to as depressive, bipolar, and related

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

disorders—with an established onset date of January 1, 1996, which was approximately six months after her twenty-second birthday. (R. 50.)[2] The record also reflects that SSA subsequently conducted a continuing disability review. (*Id*.) Because SSA lost the paper file related to Plaintiff's 1996 benefits award, and because Plaintiff was uncooperative, SSA terminated her benefits in June 2016. (*Id*.) After that, SSA investigated Plaintiff's case and continued her benefits in December 2016 for meeting Listing 12.03—schizophrenia spectrum and other psychotic disorders. (*Id*.)

Plaintiff's father also died in 2016. (R. 141.) Three years later, on November 22, 2019, Plaintiff protectively filed the instant CDB application alleging that she has been disabled since birth. (R. 139–40.) After that application was denied at the initial and reconsideration levels, a telephonic hearing was held on August 9, 2021, before an Administrative Law Judge ("the ALJ") who issued an unfavorable determination on August 26, 2021. That unfavorable determination became final when the Appeals Council denied Plaintiff's request for review on May 23, 2022.

Plaintiff seeks judicial review of that final determination. She submits that remand is warranted[3] because the ALJ erred by finding that she was not disabled before she reached her twenty-second birthday in June 1995. (Pl.'s Statement of Errors 11–18, ECF No. 11.) Specifically, Plaintiff contends that the ALJ erred by failing to consider if she met Listing 12.04 before she was 22. (*Id*. at 11–16.) Plaintiff also contends that the ALJ erred by failing to properly consider evidence that the Veteran's Administration ("VA") found that she was disabled before

---

[2] The record appears to show that Plaintiff may have filed an application or applications for benefits in 1991 and 1993. (R. 1149, 1166, 1173, 1093, 1095.)

[3] In her Reply, Plaintiff appears to challenge, for the first time, the ALJ's consideration of the state agency reviewers' administrative findings. (Pl.'s Reply 4–5, ECF No. 11.) But a party cannot raise a new argument for the first time in a Reply. *Bishop v. Oakstone Acad.*, 477 F.Supp.2d 876, 889 (S.D. Ohio 2007).

she was 18. (*Id*. at 17–19.) Defendant correctly maintains that Plaintiff's contentions of error lack merit. (Def.'s Mem. in Opp'n, 4–11, ECF No. 11.)

## II. THE ALJ'S DECISION

The ALJ issued her decision on August 26, 2021, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 10–24.) The ALJ initially explained that to be entitled to CDB, Plaintiff must have a disability that began before she reached the age of 22. (R. 13.) At step one of the sequential evaluation process,[4] the ALJ found that Plaintiff never engaged in substantial gainful activity. (R. 15.) At step two, the ALJ found that, before she was 22, Plaintiff's borderline intellectual functioning ("BIF") constituted a severe impairment. (*Id*.) At step three, the ALJ further found that, before she was 22, Plaintiff did not have a severe

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairment or combination of impairments that met or medically equaled a listed impairment, including, specifically, Listing 12.05—intellectual disorder. (R. 16.)

The ALJ then set forth Plaintiff's residual functional capacity[5] ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that, prior to attaining age 22, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant could understand, remember, and carry out simple instructions.

(R. 18.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (R. 20.) At step five, the ALJ relied on testimony from a vocational expert ("VE") to determine that in light of her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform including the representative occupations of cleaner II, garment bagger, and box bender. (R. 20–21.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, before she turned 22 in June 1995. (R. 21.)

### III.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

---

[5] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

4

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.  ANALYSIS

To be entitled to CDB, Plaintiff must show that she was dependent upon a deceased parent who received benefits and that she herself has a disability that began before she reached the age of 22. *See* 20 C.F.R. § 404.350(a)(5). The parties appear to agree that Plaintiff was dependent upon a deceased parent who received benefits. Defendant additionally urges, and Plaintiff does not dispute, that Plaintiff must also show that she was disabled during the four-year period between her eighteenth and twenty-second birthdays (*i.e.*, from June 1991 until June of

5

1995). (Def.'s Mem. in Opp'n, 4, ECF No. 11.) Plaintiff, however, disputes the ALJ's finding that she was not disabled during that time frame.

### A. The ALJ's Step 3 Determination and Listing 12.04

Plaintiff first targets the ALJ's step-three determination. In particular, she contends that the ALJ erred by failing to consider if she met the criteria for Listing 12.04 during the relevant period (*i.e.*, June 1991 through June 1995). This contention of error lacks merit.

At step three, a claimant has the burden of showing that she has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Foster v. Halter*, 279 F.3d 348, 345 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If claimant meets all criteria for a listing, she is disabled; otherwise, an ALJ must proceed to the next step in the sequential evaluation process. 20 C.F.R. § 404.1520(d)–(e).

Although the regulations require an ALJ to determine if a claimant meets or equals a listed impairment, they "do not require the ALJ to address every Listing" or to "discuss listings that the applicant clearly does not meet." *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. App'x 639, 641 (6th Cir. 2013). Instead, an ALJ should consider a listing if the record "'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing." *Id.* at 641 (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). But "[a] claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks*, 544 F. App'x. at 641–42). "Rather, the claimant must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Absent

such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433.

Here, the ALJ considered Plaintiff's impairments and determined that during the relevant period, they did not, singly or in combination, meet the criteria for Listing 12.05—intellectual disorder. (R. 16.) As Plaintiff correctly notes, however, the ALJ did not expressly consider if she met the criteria for Listing 12.04—affective disorders. Nevertheless, the ALJ did not err by failing to consider Listing 12.04 because Plaintiff fails to point to record evidence demonstrating that she could meet or equal its requirements during the relevant period.

### 1. Paragraph A of Listing 12.04

To meet Listing 12.04, Plaintiff must show that the requirements of Paragraph A(1) or (A)(2) of that listing are satisfied. Plaintiff appears to argue that she satisfied the requirements for Paragraph A(1) during the relevant period. (Pl.'s Statement of Errors 9–10, ECF No. 11.) To satisfy the Paragraph A(1) criteria, Plaintiff must point to evidence of medical documentation of a depressive disorder, characterized by five or more of the following:

    a. Depressed mood;

    b. Diminished interest in almost all activities;

    c. Appetite disturbance with changes in weight;

    d. Sleep disturbance;

    e. Observable psychomotor agitation or retardation

    f. Decreased energy;

    g. Feelings of guilt or worthlessness;

    h. Difficulty concentrating or thinking; or

    i. Thoughts of death or suicide.

20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.04(A)(1).

Plaintiff does not, however, point to medical documentation of the Paragraph A(1) criteria during the relevant period. Instead, she notes that in January 1996, approximately six months after the relevant period ended, she was found to have met Listing 12.04.[6] (Pl.'s Statement of Errors 10, 15–16, ECF No. 11.) Plaintiff reasons that although it is possible that she did not have an affective disorder until she developed one that was of listing-level severity in January 1996, it is more likely that her issues developed before that. (*Id*. at 10.) But as Defendant correctly explains, that is not enough. Plaintiff bears the burden of demonstrating that she met all the requirements for Listing 12.04, including Paragraph A, during the relevant period. Evidence of a listing-level impairment after the relevant period is insufficient unless Plaintiff demonstrates that it reflects circumstances during the relevant period. Plaintiff has failed to make such a showing.

Plaintiff relatedly argues that the ALJ erred by "ignoring" evidence that she met Listing 12.04 after the relevant period. (Pl.'s Statement of Errors 9–10, 15–16, ECF No. 11.) An ALJ is not required, however, to "discuss every piece of evidence in the record to substantiate [her] decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *see also Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467–68 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." (citations omitted)). In any event, the ALJ's determination does not indicate that she ignored Plaintiff's

---

[6] The record reflects that Plaintiff's primary diagnosis code at that time was 2960, for affective disorders. (R. 50.)

8

listing-level impairment after the relevant period. The ALJ explicitly noted Plaintiff's argument that she was "very likely disabled" during the relevant period, and specifically cited counsel's letters discussing that she was found to have met Listing 12.04 six months after the relevant period ended. (R. 19.)

Plaintiff also argues that evidence from before the relevant period might show that she was disabled during the relevant period. For instance, Plaintiff argues that she received benefits before she turned 18. (Pl.'s Statement of Errors 10, 9–10, ECF No. 11.) But the ALJ explained at the hearing that there was no record that Plaintiff received benefits because of her own disability prior to 1996, and that benefits Plaintiff received as a child were instead based instead on Plaintiff's father's record. (R. 45.)

Plaintiff also points to other evidence from before the relevant period and argues that it might show that she had an affective disorder as early as 1989. (Pl.'s Statement of Errors 10, 10–11, ECF No. 11.) But again, Plaintiff must demonstrate that evidence from before the relevant period reflected circumstances during the relevant period. Plaintiff has not done so. Moreover, even if the record might show that Plaintiff possibly had an affective disorder before the relevant period, it also shows that she appeared to improve as she approached the age of eighteen, when the relevant period started. For example, the record reflects that Plaintiff was placed in a severe behaviorally handicapped ("SBH") program at some point. (R. 803.) But in Spring 1987, a school psychologist noted that Plaintiff's functioning was within average range, which indicated that her behavior was usually appropriate, and that Plaintiff was observed to be consistently on task, behaving according to rules, and behaving more appropriately than a majority of her classmates. (R. 425, 923.) Notes from October 1987, indicate that although Plaintiff had strong withdrawal tendencies, she reportedly had no clinical depression. (R. 827, 883.) An evaluator

noted in May 1988, that Plaintiff had no evidence of depression. (R. 255.) In June 1988, a school evaluation team determined that Plaintiff no longer met eligibility requirements for SBH classes, and that she should be exited from them. (R. 817, 1069.) Records from the following academic year confirm that Plaintiff was no longer enrolled in SBH classes. (R. 803, 809.) In February 1990, Plaintiff was enrolled in developmentally handicapped classes. (R. 1061.) But in June of 1990, a school evaluation team found that although Plaintiff appeared to need special education services, she did not have a severe behavioral handicap, and that her emotional status was not a primary basis for her academic deficits. (R. 723, 1113.) In January 1991, approximately five months before the relevant period began, a school evaluation team again found that Plaintiff did not have a severe behavioral handicap and that her emotional status was not a primary basis for her academic deficits. (R. 785.)

Likewise, the handful of records from the relevant period fail to support that Plaintiff had a disabling affective disorder during that time. The record, for instance, shows that in July 1991, Plaintiff was living independently with an adult female friend and that she assisted her friend by providing childcare and household help. (R. 1462.) In January 1992, Plaintiff presented with only some "mild depression." (R. 1464.) Plaintiff began home instruction after she became pregnant and developed edema. (R. 765, 1053, 1055.) In September 1992, she returned from home instruction to a developmentally handicapped classroom. (R. 729.) But she transferred to a vocational work adjustment program for the 1993–1994 school year. (R. 717, 719.) Although Plaintiff had failing grades that year, nothing in the record suggests that her lack of academic achievement was related to disabling depression.

In short, Plaintiff has not identified record evidence from before, during, or after the relevant period that shows that the Paragraph A(1) criteria was satisfied during the relevant

period. Nor does the Court find any such evidence after independent review. Therefore, the ALJ did not commit reversible error by failing to consider Listing 12.04.

### 2. Paragraphs B and C of Listing 12.04

Plaintiff's claim fails because she does not show that during the relevant period, she could met Paragraph A(1) of Listing 12.04. Her claim fails for a second reason. To meet that listing, Plaintiff must also point to evidence that she meets the functional limitations in Paragraph B or Paragraph C of that listing. Although the ALJ did not consider if Plaintiff met Listing 12.04, she did consider if Plaintiff met Listing 12.05. Paragraph B is the same for both listings.

Plaintiff challenges the ALJ's Paragraph B assessment. (Pl.'s Statement of Errors 10, 11–15, ECF No. 11.) To meet Paragraph B, Plaintiff must show that her affective disorder resulted in extreme limitations in one, or marked limitations in two of the following areas of mental functioning:

1. Understand, remember, or apply information . . .
2. Interact with others . . . .
3. Concentrate, persist, or maintain pace . . . .
4. Adapt or manage oneself . . . .

20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.04(B).

Here, the ALJ determined that Plaintiff had only a moderate limitation in understanding, remembering, or applying information. (R. 17.) The ALJ explained that she made that determination, in part, because Plaintiff's past education records showed that she exhibited an ability to ask and answer questions. (*Id.*) Substantial evidence supports that determination—the

record reflects that Plaintiff was able to take standardized tests. (*See e.g.*, R. 253, 283, 285, 293, 307, 481, 547, 797, 825, 913 919.) The ALJ also determined that Plaintiff had only mild limits in this area of mental functioning because the record made no mention of any chronic issues with Plaintiff's short- or long-term memory. (R. 17.) Substantial evidence supports that determination too—Plaintiff does not point to, and the Court has not found, records documenting that Plaintiff had chronic memory issues during the relevant period.

The ALJ also determined that Plaintiff had only a mild limitation in interacting with others. (R.17.) The ALJ made this determination, in part, because records showed that Plaintiff was cooperative, demonstrated good interest and motivation, and conversed effectively. (*Id.*) Substantial evidence supports that determination. In January 1990, an evaluator wrote that Plaintiff was a cooperative student who demonstrated good interest and motivation, and that although Plaintiff was somewhat soft-spoken, she was able to converse effectively about issues she had at school. (R. 799.) Other educational evaluators similarly noted that Plaintiff was cooperative (R. 261, 289, 293, 305); cooperative and worked with a minimum of coaxing (R. 921); cooperative and tried most of the time (R. 375, 377); cooperative, well-motivated, and made good effort (R. 277, 279, 281, 267); or that Plaintiff cooperated well and worked hard (R. 315). Evaluators additionally noted that Plaintiff easily established or maintained rapport. (R. 261, 293, 921, 434). In 1987, an evaluator also noted that Plaintiff had no difficulty getting along with her peers. (R. 425.)

The ALJ further determined that Plaintiff had only a moderate limitation in concentration, persistence, or pace. (R. 17.) The ALJ made this determination, in part, because records showed that Plaintiff scored a 78 on her IQ tests, which put her in the borderline range of

functioning. (*Id.*) Substantial evidence supports that determination. The record reflects that testing in 1990 resulted in a full scale IQ score of 78. (R. 797.)

In addition, the ALJ determined that Plaintiff also had only a mild limitation in adapting or managing herself. (R. 17.) The ALJ made this determination, in part, because records showed that during the relevant period, Plaintiff lived at times on her own and with her children. (*Id.*) Substantial evidence supports that determination too. The record reflects that Plaintiff lived independently for at least some time during the relevant period. (R. 1462.)

Plaintiff does not challenge any of these record-based reasons that the ALJ provided for her Paragraph B determinations. Instead, Plaintiff points out that the ALJ noted that Plaintiff's behavior during the 2021 hearing demonstrated that she only had mild or moderate limits in these areas of mental functioning. Plaintiff argues that this was error because her abilities during that hearing do not shed light on her condition during the relevant period. The Court, however, notes that even if the ALJ's hearing-related observations are too attenuated to reliably cast light on Plaintiff's status during the relevant period, the ALJ provided other record-based reasons for her Paragraph B determinations. And Plaintiff does not challenge those reasons.

Moreover, Plaintiff has not pointed to record evidence that she had marked or extreme limitations in any of these areas of mental functioning during the relevant period. Therefore, she has failed to demonstrate that the Paragraph B criteria was satisfied during the relevant period. And the Court has not independently located such evidence. Accordingly, the Court finds that the ALJ did not commit reversible error by failing to consider Listing 12.04.

    **B.**    **The ALJ's Analysis of the VA's Determination**

Plaintiff next argues that the ALJ erred by failing to properly consider the VA's disability rating. This contention of error lacks merit.

Under the regulations that govern claims like this one, filed on or after March 27, 2017, certain evidence is deemed "inherently neither valuable nor persuasive to the issue of whether [a claimant] is disabled . . . . " 20 C.F.R. § 404.1520b(c). Such evidence includes disability findings and determinations by other governmental agencies. *Id*. § 404.1520b(c)(1). As to how such evidence is assessed, the regulations further provide as follows:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs . . . make disability . . . and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency . . . about whether you are disabled . . . or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency . . . about whether you are disabled . . . or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504.

Here, the ALJ discussed the VA's disability rating determination as follows:

> The claimant's representative indicated that through her survivors benefits the Veterans Administration opined on October 30, 2020, the claimant had been permanently incapable of self-support prior [to her eighteenth birthday] (Exhibit 4F p. 4). However, the undersigned notes that decisions by other government agencies are inherently neither valuable nor persuasive. Moreover, there was no indication of what evidence they reviewed in coming to their decision.

(R. 19.) As this discussion demonstrates, the ALJ correctly explained that decisions by other government agencies are neither inherently valuable or persuasive. § 404.1520b(c)(1). Plaintiff's arguments to the contrary lack merit.

Plaintiff correctly contends, however, that the ALJ was required to consider all the evidence that the VA considered to the extent SSA also received it as evidence. Plaintiff further notes that the VA indicated that it considered records from Cincinnati Children's Hospital

14

Medical Center, and that this same evidence was provided to SSA. (R. 1452–53, 1450.) Thus, Plaintiff correctly asserts that the ALJ erred when she explained that the record did not indicate what evidence the VA considered.

Nevertheless, the at-issue records primarily consist of hand-written notes from counseling appointments that occurred before the relevant period. (R. 1457–1466.) Only four appointments took place during the relevant period (R. 1462–1465), and one of them was an appointment related to reproductive health education (R. 1466). Moreover, the records show that in July 1991, Plaintiff was living independently with a friend who she assisted (R. 1462) and that she presented with only mild depression in January 1992 (R. 1464). In short, Plaintiff has failed to demonstrate, and the Court has not found, that these records in any way demonstrate that Plaintiff had a disabling affective disorder during the relevant period. Accordingly, any error the ALJ may have made about the records considered by the VA is harmless.

## V.     CONCLUSION

For all the foregoing reasons, the Court **AFFIRMS** the Commissioner's non-disability determination and **OVERRULES** Plaintiff's Statement of Errors.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE